UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

_____
                                    )

Conservation Law Foundation, Inc.    )

                                    )      Case No. _____

            Plaintiff,       )

                                    )      **COMPLAINT FOR**

                                    )      **DECLARATORY AND INJUNCTIVE**

                                    )      **RELIEF AND CIVIL PENALTIES**

          v.                    )

                                    )      November 16, 2016

White Mountain                  )

Lumber Company, Inc.           )      (Federal Water Pollution Control Act,

                                    )

          Defendant.     )      33 U.S.C. §§ 1251 to 1387)

_____ )

**INTRODUCTION**

1.     This is a civil suit brought under the citizen suit enforcement provisions of the

Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* ("Clean Water Act,"

"CWA," or "Act"). Plaintiff, Conservation Law Foundation, Inc. ("Plaintiff" or "CLF")

seeks declaratory judgment, injunctive relief, and other relief the Court deems proper to

remedy White Mountain Lumber Company, Inc.'s ("White Mountain Lumber Company"

or "Defendant") violations of the Clean Water Act. The Defendant's violations include

past and ongoing unauthorized discharges of polluted stormwater and process wastewater

associated with industrial activities at its timber products facility in Berlin, New

Hampshire into waters of the United States, and failure to comply with applicable U.S.

Environmental Protection Agency ("EPA") National Pollutant Discharge Elimination

System ("NPDES") permits, including the Multi-Sector General Permit for Stormwater

Discharges Associated With Industrial Activity ("Multi-Sector General Permit" or

1

"MSGP") and the individual NPDES permit that is required for discharges of process wastewater.

2. Section 301(a) of the Clean Water Act makes "the discharge of any pollutant by any person [ . . . ] unlawful" except when in conformance with enumerated statutory provisions, including the requirement that a discharge obtain and comply with a NPDES permit under Section 402 of the Act. *See* 33 U.S.C. §§ 1311(a), 1342.

3. Stormwater that is discharged from industrial activities requires a NPDES permit. Specifically, EPA acknowledged that when stormwater or snowmelt comes into contact with activities at industrial facilities, the runoff picks up pollutants and transports them to nearby storm sewer systems or to rivers, lakes, and coastal waters. As a result, EPA's NPDES program includes the MSGP that covers 29 categories of industrial activity. Discharges of process wastewater, such as water resulting from the processing of timber, lumber, and earth products, are not covered by the MSGP and therefore require coverage under an individual NPDES permit.

4. Defendant has operated and continues to operate a timber products facility located at 30 East Milan Road, Berlin, NH 03570 (the "Facility") since at least 1945, and, upon information and belief, engages in industrial activities including storing, handling, and processing timber, lumber, and earth products outdoors, or in a manner otherwise exposed to the elements; operating and storing heavy machinery and equipment outdoors; and driving vehicles on and off of the Facility.

5. Upon information and belief, Defendant also uses water at the Facility, which during manufacturing or processing, comes into direct contact with or results from the

production or use of raw material, intermediate product, finished product, byproduct, or waste product.

6.      Defendant's industrial activities fall within enumerated categories of industrial activity subject to the Multi-Sector General Permit. These activities generate stormwater pollution that is collected, channeled, and conveyed into the Androscoggin River, a water of the United States.

7.      Upon information and belief, Defendant's use of water in its industrial processes, including but not limited to washing or spraying piles of logs, wood, mulch, sawdust, and earth products, generates process wastewater. The discharge of process wastewater is not covered under the Multi-Sector General Permit and can only be permitted by an individual NPDES permit, thus Defendant's past and on-going discharges of process wastewater can only be authorized by an individual NPDES permit.

8.      Defendant's industrial activities generate stormwater pollution that is collected, channeled, and conveyed into the Androscoggin River, a water of the United States within the Upper Androscoggin watershed. The Androscoggin River flows into Merrymeeting Bay, Lower Kennebec River, and the Atlantic Ocean—all of which are also waters of the United States.

9.      Defendant's past and ongoing discharges of stormwater associated with industrial activity have not been, and are not, authorized by an individual NPDES permit or the applicable MSGP, including the 2015 MSGP.

10.      Defendant's past and on-going discharges of process wastewater have at no time been authorized by an individual NPDES permit or the applicable MSGP, including the recently-issued 2015 MSGP.

3

11.     Defendant has operated, and continues to operate the Facility in violation of the Clean Water Act.

## JURISDICTION AND VENUE

12.     Plaintiff brings this civil suit under the citizen suit enforcement provisions of Section 505 of the Clean Water Act, 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the Act, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. § 1331 (an action arising under the Constitution and laws of the United States).

13.     On September 16th, 2016, Plaintiff notified Defendant of its intention to file suit for violations of the Clean Water Act, in compliance with the statutory notice requirements under Section 505(b)(1) of the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations located at 40 C.F.R. § 135.2. A true and accurate copy of Plaintiff's Notice Letter (the "Notice") is appended as Exhibit A.

14.     More than sixty days have elapsed since Plaintiff served the Notice on Defendant, during which time neither the EPA nor the State of New Hampshire has commenced a court action to redress the violations alleged in this Complaint. 33 U.S.C. § 1365(b)(1)(B).

15.     Venue is proper in the U.S. District Court for the District of New Hampshire pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

16.     Plaintiff, CLF, is a nonprofit, member-supported, regional organization dedicated to protecting New England's environment. It is incorporated under the laws of

Massachusetts with an office at 27 North Main Street, Concord, NH 03301, and a principal place of business at 62 Summer Street, Boston, MA, 02110. CLF has over 4,000 members, including more than 450 members in the state of New Hampshire. For fifty years, CLF has worked to protect the health of New England's waterways, including addressing the significant water quality impacts of stormwater pollution. CLF members use and enjoy New England's waterways for recreational and aesthetic purposes, including boating, swimming, fishing, hunting, and sightseeing, including but not limited to waters of the United States affected by Defendant's unpermitted discharges of pollutants. CLF actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

17.     Defendant's unauthorized discharges of pollutants into surface waters, wetlands, the Androscoggin River, and downstream receiving waters adversely affect CLF members' use and enjoyment of those water resources. The interests of CLF's members have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the Clean Water Act and the National Pollutant Discharge Elimination System. The relief sought in this action will redress these harms. The unlawful acts and omissions described herein have and will continue to irreparably harm Plaintiff's members, for which harm they have no plain, immediate, or adequate remedy at law.

18.     Defendant White Mountain Lumber Company, Inc. is a corporation in good standing, organized under the laws of New Hampshire, with a principal place of business at 30 East Milan Road, Berlin, NH 03570. Barry J. Kelley is the president of White Mountain Lumber Company and is also the Defendant's registered agent. Defendant

operates a timber products facility at 30 East Milan Road, Berlin, NH 03570. Defendant

maintains, operates, and is responsible for industrial activities at the Facility.

## STATUTORY AND REGULATORY BACKGROUND

19.   Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), strictly prohibits the

discharge of any pollutant into waters of the United States from a point source, unless the

discharge complies with various enumerated sections of the Act. Among other things,

Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a

valid NPDES permit issued pursuant to Section 402(p) of the Act, 33 U.S.C. § 1342(p).

20.   Section 502(14) of the Clean Water Acts defines "point source" broadly to

include "any discernible, confined and discrete conveyance, including but not limited to

any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock,

concentrated animal feeding operation, or vessel or other floating craft, from which

pollutants are or may be discharged." *See* 33 U.S.C. § 1362(14). Under the regulations

that implement the Clean Water Act, the definition of "discharge of a pollutant" includes

"additions of pollutants into waters of the United States from: surface runoff which is

collected or channelled by man[.]" *See* 40 C.F.R. § 122.2.

21.   In 1987, Congress amended the Clean Water Act to require that facilities engaged

in certain industrial activities obtain stormwater discharge permits. Water Quality Act of

1987, Pub. L. No. 100-4, § 405, 101 Stat 7 (1987); *see also* 55 Fed. Reg. 47,990, 47,991-

93 (Nov. 16, 1990). Accordingly, Section 402 of the CWA directed the EPA to develop a

phased approach for regulating stormwater discharges under the NPDES permitting

program. 33 U.S.C. §§ 1342(a)(1), 1342(p)(2), 1342(p)(3)(A), 1342(p)(4), 1342(p)(6).

22.     In 1990, in furtherance of the requirements of Section 402, the EPA promulgated regulations, set forth at 40 C.F.R. § 122.26, requiring regulated industrial dischargers to submit applications for NPDES permit coverage no later than October 1, 1992. In establishing these regulations, EPA relied upon significant data showing the harmful effects of stormwater runoff on rivers, streams, and coastal areas across the nation. In particular, EPA found that runoff from industrial facilities contained elevated pollution levels. 55 Fed. Reg. 47,990, 47,991 (Nov. 16, 1990) (codified at 40 C.F.R. § 122).

23.     In September 1995, EPA issued a NPDES Storm Water Multi-Sector General Permit for Industrial Activities. EPA reissued the MSGP in October 2000, September 2008, and most recently in June 2015. *See* 65 Fed. Reg. 64,746 (Oct. 30, 2000); 73 Fed. Reg. 56,572 (Sept. 29, 2008); 80 Fed. Reg. 34,403 (June 16, 2015).

24.     To discharge stormwater lawfully, industrial dischargers like Defendant who operate facilities subject to regulation must obtain coverage under the Multi-Sector General Permit and comply with its requirements or obtain coverage under an individual NPDES permit.

25.     Under the MSGP, industrial dischargers must file with the EPA a complete and accurate notice of intent ("NOI") to be covered by the MSGP and develop and implement a Stormwater Pollution Prevention Plan ("SWPPP") identifying and controlling sources of pollutants associated with industrial discharges from the subject facility.

26.     The 2015 MSGP required each subject facility to file its NOI for coverage by September 2, 2015.

27.     The permit has several key changes from the prior MSGP, including but not limited to, requiring disclosures in the NOI to be in electronic format, increasing the

amount of detail regarding stormwater outfalls and receiving waters that a discharger must include in its NOI to receive permit coverage, and modifying effluent limitation requirements, inspections, corrective actions and other industry-specific requirements.

28.     Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation."

29.     Such enforcement action under Section 505(a) of the Act includes an action seeking remedies for unauthorized discharges in violation of Section 301 of the Act, 33 U.S.C § 1311, as well as for failing to comply with one or more permit conditions in violation of Sections 402 and 505(f) of the Act, 33 U.S.C. §§ 1342, 1365(f).

30.     Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 per day per violation for all violations occurring from January 12, 2009 through November 2, 2015, and up to $51,570 for all violations that occurred after November 2, 2015, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. §§ 19.1–19.4.

## FACTS

31.     Upon information and belief, since at least 1945, Defendant has operated, and continues to operate, a timber products facility located at 30 East Milan Road, Berlin, NH 03570.

32.     The primary activities at the Facility, which involve the processing of timber products—Standard Industrial Classification Code Prefix 24, which includes but is not limited to 2421: general sawmills and planing mills; 2491: wood preserving; 2411: log

8

storage and handling; 2426: hardwood dimension and flooring mills; 2429: special

product sawmills, not elsewhere classified; and 2499: wood products, not elsewhere

classified—are among the sectors of industrial activity covered by the Multi-Sector

General Permit. *See* ENVIRONMENTAL PROTECTION AGENCY, MULTI-SECTOR GENERAL

PERMIT FOR STORMWATER DISCHARGES ASSOCIATED WITH INDUSTRIAL ACTIVITY

(MSGP) Appen. D, Sector A https://www.epa.gov/sites/production/files/2015-

10/documents/msgp2015_finalpermit.pdf (June 5, 2015), *see also* 40 C.F.R.

§ 122.26(b)(14) (detailing a list of activities).

33.     Upon information and belief, Defendant has engaged and continues to engage in

the following industrial operations at the Facility: buying, producing, processing, storing

and selling logs, mulch, bark, firewood, flooring, furniture grade hardwood, wood chips,

and clean mill chips; processing and storing logs, mulch, bark, and wood chips outdoors

or otherwise exposing such timber materials to the elements; operating, maintaining, and

storing heavy machinery and equipment outdoors; and driving trucks and other vehicles

on and off the Facility *via* driveways and immediate access roads. Defendant's

processing of its timber products, upon information and belief, includes washing those

products with water.

34.     The timber product and earth material piles and areas of industrial activity at the

Facility are uncovered, and therefore exposed to precipitation. Upon information and

belief, the timber products and earth material piles also are subject to being sprayed-down

with water during certain conditions.

35.     Upon information and belief, the sources of pollutants associated with the

industrial activities at the Facility include, but are not limited to: timber product and earth

material piles; timber processing machinery and equipment; vehicles; shipping and receiving areas; loading and unloading areas; maintenance areas; and onsite re-fueling of machinery.

36. Upon information and belief, pollutants present in stormwater discharged from the Facility include, but are not limited to: bark and wood debris, total suspended solids (TSS), leachates—which can contain high levels of TSS and biochemical oxygen demand, also known as BOD—oil, grease, metals, solvents, acids, nutrients, pathogens, dissolved solids, road salt—containing chlorides, sodium and impurities—trash, fuel and other pollutants associated with the Facility's operations.

37. EPA considers precipitation above 0.1 inches during a 24-hour period a measurable precipitation event. *See* 40 C.F.R. § 122.26(c)(i)(E)(6).

38. The 2015 Multi-Sector General Permit specifically references snowmelt as a form of stormwater discharge that must be addressed by a discharger in its control measures. 2015 Multi-Sector General Permit pt. 2.1.2.1.

39. Upon information and belief, during precipitation events and instances of snowmelt, water flows onto and over exposed materials and accumulated pollutants at the Facility, generating stormwater runoff associated with the Facility's industrial activity.

40. Upon information and belief, stormwater runoff from the Facility has been and continues to be conveyed by the operation of gravity *via* site grading, surface water channels, subsurface hydrological connections, detention ponds, pipes, and other conveyances to the Androscoggin River and its associated tributaries and wetlands and downstream receiving waters, including Merrymeeting Bay and the Lower Kennebec River. This runoff carries pollutants from several sources, including but not limited to:

timber product and earth material piles that are open to the elements, machines and equipment left outdoors, and vehicles driven on and off the Facility.

41.    The Androscoggin River is within the Upper Androscoggin watershed and flows into Merrymeeting Bay, Lower Kennebec River, and the Atlantic Ocean.

42.    The Androscoggin River, Merrymeeting Bay, and the Lower Kennebec River are "waters of the United States," as defined in 40 C.F.R. § 122.2, and therefore also "navigable waters," as defined in 33 U.S.C. § 1362(7).

43.    The EPA has designated the Androscoggin River as impaired under Section 303(d) of the Clean Water Act.

44.    Defendant discharges directly and indirectly into the Androscoggin River through multiple point source outfalls.

45.    Upon information and belief, discharged water and stormwater runoff from the Facility are not treated to remove the pollutants—referenced above in Paragraph 36—before it is discharged into the Androscoggin River.

46.    Defendant has failed to obtain coverage under the 2015 MSGP, or any other valid NPDES permit for the Facility.

47.    Upon information and belief, as of November 16, 2016, Defendant is discharging pollutants in violation of the Clean Water Act as evidenced by the following:

(a)    Defendant has not filed an electronic NOI as required by the 2015 MSGP;

(b)    Defendant has not developed, implemented, and filed with the NOI, a Stormwater Pollution Prevention Plan that meets the requirements of the 2015 MSGP Part 5; and

11

(c)     Defendant has failed to install and implement control measures to meet numeric and non-numeric effluent limitations in Part 2.1 of the 2015 MSGP.

48.     Accordingly, Defendant is not authorized to discharge from the Facility under the 2015 Multi-Sector General Permit because it has not met all requirements of Part 1.2 of the 2015 MSGP.

49.     In addition to its unpermitted stormwater discharges, upon information and belief, Defendant's Facility uses water in its industrial processes, including but not limited to washing and spraying timber products, earth material piles, and machinery.

50.     Upon information and belief, process wastewater from the Facility is and has been discharged into waters of the United States.

51.     As of November 16, 2016, Defendant does not hold a valid individual NPDES permit authorizing it to discharge process wastewater.

## CLAIMS FOR RELIEF

### First Cause of Action:
### Unauthorized Discharge of Pollutants Into Waters of the United States

52.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

53.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from any "point source" to waters of the United States, except for discharges in compliance with a NPDES permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

54.     In order to be authorized to lawfully discharge under the MSGP, a regulated industrial discharger's facility must meet requirements set forth in Part 1.3.1 of the 2015 MSGP. These requirements include:

(a) Establishing eligibility for coverage under the permit;

(b) Selecting, designing, installing, and implementing control measures in accordance with 2015 MSGP Part 2.1;

(c) Developing a complete and accurate SWPPP in accordance with the 2015 MSGP's requirements; and

(d) Filing a complete and accurate NOI to seek coverage under the 2015 MSGP.

55. Defendant is an industrial discharger with a primary SIC Code Prefix of 24 and/or another activity listed under Appendix D of the Multi-Sector General Permit or 40 C.F.R. § 122.26(b)(14), therefore Defendant is obligated to apply for coverage under the MSGP or other legal authorization for its Facility.

56. Defendant's industrial activities at the Facility have resulted in, and continue to result in, "stormwater discharge associated with industrial activity," within the meaning of 40 C.F.R. § 122.26(b)(14), to waters of the United States on—upon information and belief—every day of precipitation greater than 0.1 inches and every instance of snowmelt.

57. Defendant's discharges of stormwater associated with industrial activity ("industrial stormwater discharges") are discharges of pollutants within the meaning of 33 U.S.C. § 1362(12).

58. Defendant's industrial stormwater discharges at the Facility are "point source" discharges into waters of the United States.

59. Industrial stormwater discharges at the Facility have caused and continue to cause discharges of pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

60.     Defendant has discharged and continues to discharge industrial stormwater without authorization under a valid NPDES permit as required by CWA Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

61.     Each day on which Defendant has discharged and continues to discharge industrial stormwater from the Facility without authorization under a valid NPDES permit constitutes as a distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a) and Section 402 of the CWA, 33 U.S.C. § 1342.

**Second Cause of Action: Failure to Obtain and Comply with
an Individual NPDES Permit for Industrial Discharges**

62.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

63.     Process wastewater discharges are not covered under the MSGP; rather, they require individual NPDES permit coverage.

64.     Defendant is and has been required to obtain permit coverage for the process wastewater discharges from its Facility by seeking and obtaining an individual NPDES permit, pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

65.     Defendant has failed, and continues to fail, to obtain permit coverage under an individual NPDES permit for process wastewater discharges from its Facility.

66.     Each and every day on which Defendant has not obtained individual NPDES permit coverage for its Facility constitutes as a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and Section 402 of the Act, 33 U.S.C. § 1342.

**Third Cause of Action:
Failure to Obtain a Permit for Industrial Stormwater Discharges**

14

67.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

68.     Defendant has been required to obtain permit coverage for its Facility under each of the MSGPs issued by EPA, including the 1995, 2000, 2008 and 2015 MSGPs, or by seeking and obtaining an individual NPDES permit pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

69.     Each and every day on which Defendant has not held a general or individual NPDES permit coverage for its Facility constitutes as a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and Section 402 of the Act, 33 U.S.C. § 1342.

**Fourth Cause of Action:**
**Failure to Comply with a Permit for Industrial Stormwater Discharges**

70.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

71.     Regulated industrial discharges are required at a minimum to comply with the requirements of the MSGP, which include but are not limited to:

(a)     Developing and implementing a complete and accurate Stormwater Pollution Prevention Plan;

(b)     Submitting a complete Notice of Intent to be covered by the MSGP, accompanied by a complete and accurate SWPPP;

(c)     Implementing required stormwater control measures;

(d)     Conducting facility inspections in accord with the MSGP (MSGP pt. 3);

(e)     Conducting site inspections and submitting the results thereof to EPA (MSGP pt. 3);

15

(f)   Monitoring and analyzing stormwater samples consistent with procedures set forth in the Multi-Sector General Permit, including but not limited to benchmark monitoring and monitoring for discharges to an impaired water (MSGP pt. 6, appen. B);

(g)   Complying with reporting and recordkeeping requirements, including but not limited to reporting of any noncompliance during an applicable time period (MSGP pt. 7);

(h)   Satisfying sector-specific requirements such as requirements pertaining specifically to timber products (MSGP pt. 8, Sector A);

72.   Defendant has failed, and continues to fail, to comply with the requirements of the Multi-Sector General Permit, including, upon information and belief, each of the requirements described above.

73.   Each and every day on which Defendant has failed to comply with the Multi-Sector General Permit is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

## RELIEF REQUESTED

72.   Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

(a)   Declare Defendant to have violated and to be in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for its Facility's unlawful and unauthorized discharges of pollutants to waters of the United States;

16

(b)     Declare Defendant to have violated and to be in violation of Section 402 of the Clean Water Act, 33 U.S.C. § 1342, for its failure to obtain coverage under the 2015 Multi-Sector General Permit for the Facility;

(c)     Declare Defendant to have violated and to be in violation of Section 402 of the Clean Water Act, 33 U.S.C. § 1342, for its failure to comply with all applicable requirements of the Multi-Sector General Permit for the Facility;

(d)     Enjoin Defendant from discharging pollutants from the Facility into waters of the United States except as authorized by and in compliance with a NPDES Permit;

(e)     Order Defendant to comply fully and immediately with all applicable requirements of the Multi-Sector General Permit for the Facility;

(f)     Order Defendant to apply immediately for an individual NPDES permit for its Facility applicable to process wastewater;

(g)     Order Defendant to pay civil penalties of $37,500 per day per violation for all violations occurring from January 12, 2009 through November 2, 2015, and $51,570 for penalties that are assessed on or after August 1, 2016, for violations that occurred after November 2, 2015, for each violation of the Clean Water Act at the Facility pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. §§ 19.1–19.4;

(h)     Order Defendant to take appropriate actions to remedy harm caused by Defendant's noncompliance with the Clean Water Act;

17

(i)    Award Plaintiff's costs—including reasonable investigative, attorney, witness, and consultant fees—as permitted by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d); and

(j)    Award any such other and further relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff does not request a jury trial.

Respectfully submitted this 16th day of November, 2016,

CONSERVATION LAW FOUNDATION, INC.,

By its attorney,

/s/ Zachary K. Griefen
Zachary K. Griefen, BBO # 665521
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
(802) 223-5992 x4011
zgriefen@clf.org

18